**Marcus GABRIEL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–87–00889–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 4, 1988.

Sandra Garfinkel, Robert Wicoff, Houston, for appellant.

John B. Holmes, Dist. Atty. of Harris County, for appellee.

Before JACK SMITH, BISSETT and COHEN, JJ.

ON MOTION FOR REHEARING

COHEN, Justice.

Our prior opinion of June 23, 1988 is withdrawn, and the following is substituted. Appellant's motion for rehearing is granted, but the requested relief is denied.

A jury found appellant guilty of aggravated robbery, and assessed his punishment at 15 years and one day confinement.

In his sole point of error, appellant contends that the trial court erred by instructing the jury on the parole charge, pursuant to Tex.Code Crim.P.Ann. art. 37.07 (Vernon Supp.1988). Appellant did not object on this basis at trial.

Article 37.07 is unconstitutional. *Rose v. State*, 752 S.W.2d 529 (Tex.Crim. App., 1988) (op. on reh'g). Reversal is required unless the appellate court determines, beyond a reasonable doubt, that the error made no contribution to the punish-

ment assessed. This test is applied regardless of whether objection is made.

The record reflects that appellant and a co-defendant, who were on a motorcycle, approached Henry Williams, a 17–year–old, while he was walking to a friend's house. Williams recognized the two men from the neighborhood. The men asked Williams if he had any money. Williams stated that he did, but that he was not going to loan it to them. Williams testified that he believed the appellant and his co-defendant were both "high on drugs." Williams started to walk away, and the men followed. He then ran to a nearby house and knocked on the door, but no one answered. The co-defendant got off the motorcycle, struggled with Williams, and Williams slipped to the ground. Williams had his money in his hand and was holding on to it when the co-defendant bit his hand. Williams started yelling for help, and the co-defendant called to appellant, who was still on the motorcycle.

Appellant got off the motorcycle, pulled a pistol from his belt, and set it down. Appellant then got on top of Williams and started to choke him. When Williams continued to yell, appellant picked up the pistol and told Williams that he was going to kill him. Appellant then fired the pistol into the air. Williams continued to yell, and appellant cupped his hand over Williams' mouth. At that point, Williams let go of his money.

Appellant told Williams that he ought to kill him, but the co-defendant said that they should let Williams go free. Williams ran to a neighborhood church, told his mother of the robbery, and she called the police. When the police were searching for appellant in the neighborhood, appellant saw them and ran into the woods. Several patrol cars and a helicopter could not locate appellant. Appellant eventually turned himself in to authorities.

Appellant testified that after he saw in a newspaper that he was wanted for aggravated robbery, he turned himself in to authorities in order to show his innocence.

There were no references to parole during the trial or in jury argument. The charge instructed the jury not to discuss how long appellant would be required to serve; not to consider the manner in which parole law would be applied to appellant; and that such matters, being within the exclusive jurisdiction of the Board of Pardons and Paroles and the Governor, "must not be considered by you." This is identical to the instruction given in *Rose.*

The evidence reflected that appellant had been previously convicted in 1981 of the misdemeanor offense of possession of a controlled substance. The punishment range for the aggravated robbery was five to 99 years, with a fine up to $10,000. The jury assessed punishment of 15 years and one day confinement, although the prosecutor argued for 35 years. The prosecutor stated that if the jury could not give appellant 35 years, they should at least give him 15 years and one day because he robbed a 17–year old, tried to choke him, fired a pistol, and then threatened to kill him. Appellant argued for probation.

■ In light of the circumstances of the crime, appellant's prior misdemeanor offense, the curative instruction, the relatively light sentence assessed, and the fact that the jury's verdict was exactly the minimum figure that the State had requested, rather than some new figure selected by the jury to accomplish a certain minimum period of confinement, we conclude that the parole instruction made no contribution to the punishment assessed.

We nevertheless feel compelled to make some observations about the problems facing intermediate appellate courts when confronting *Rose* error.

Determining whether the parole charge is harmless is one of the most difficult and least objective decisions we are called upon to make. Different courts (and different panels of the same court) are unlikely to achieve consistent results under this highly subjective standard. Moreover, current law makes it impossible for the parties to prove harm or lack of harm. Tex.R.Crim. Evid. 606(b) prohibits a juror from testifying about any statement occurring during deliberation or its effect on his vote or

mental processes. The sole source of objective guidance on the harm issue is thus unavailable. We are left with two unpleasant choices: we must either reverse every case where punishment exceeded the minimum or make poorly educated guesses about whether the defendant was harmed. We respectfully suggest a different approach to the *Rose* problem.

*Rose* holds that whether the defendant objected is irrelevant to the decision on appeal. In our opinion, it is not only relevant, but crucial. We would prefer to hold that a failure to object waived the error, and that a proper objection requires reversal. This, we respectfully submit, would lead to results that were consistent, practical, and fair.

Texas courts have long enforced a contemporaneous objection rule. *Parker v. State*, 649 S.W.2d 46, 55 (Tex.Crim.App. 1983). A requirement to object is included in our rules of evidence, Tex.R.Crim.Evid. 103, and in our rules of appellate procedure. Tex.R.App.P. 52. It is fair to require a defendant to object when doing so could have prevented the harm complained of on appeal.

■ Appellant might well have prevented the error here by objecting to the parole charge. We take judicial notice that several district courts in Harris County were sustaining objections to the parole instuction and omitting the instruction from the charge before the first Court of Criminal Appeals' opinion in *Rose*. There is no reason to assume that the trial judge in this case would not have done so. Moreover, appellant may have deliberately chosen not to object because he wanted the jury to know that he would have to serve a full one-third of his sentence, without consideration of good time, before being considered for parole. This may have benefited him by correcting any juror's possible erroneous opinion that appellant would serve a lesser portion of his sentence before becoming eligible for parole. The trial tactic of not objecting seems especially appropriate in this case, where the defendant was eligible for and sought probation and had only one prior conviction, a misdemeanor not involving violence or moral turpitude. Thus, it is as likely that appellant benefited from the unconstitutional instruction as it is that he was harmed.

The recent trend in Texas criminal law has been to require a defendant to object or suffer the consequences. Thus, jury charge error that formerly resulted in automatic reversal without objection now will result in reversal only if the harm was egregious. *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App.1985) (op. on reh'g). The people have amended the Texas Constitution, and the legislature has enacted a statute to avoid the doctrine of fundamental error in indictments and to require, instead, a pre-trial objection in order to preserve appellate review of defects in the form or substance of indictments. Tex. Const. art. V, sec. 12; Tex.Code Crim.P. Ann. art. 1.14(b) (Vernon Supp.1988). It is thus consistent with Texas constitutional law, statutory law, and common law to require an objection to similar errors as a prerequisite to appellate review. *Rose* error should not be treated differently just because it is of constitutional magnitude. Many Texas cases have held that precious constitutional protections against unreasonable search and seizure, compulsory self-incrimination, and denial of due process may be waived in an unguarded moment by failing to object. *Boulware v. State*, 542 S.W.2d 677, 682 (Tex.Crim.App.1976). *Rose* error should be treated the same. The defendant who failed to object should get no relief.

In contrast, the objecting defendant should get a new trial, at least on punishment. It is not the defendant's fault that the legislature enacted a statute in violation of the Texas Constitution, nor is it his fault that a trial court overruled his objection to an unconstitutional instruction clearly designed to increase his sentence. Neither is it the defendant's fault that Tex. R.Crim.Evid. 606(b) takes away his only means of proving that he was harmed, namely, the right to introduce testimony or affidavits from jurors concerning the role that the parole instruction played in the assessment of punishment.

The inquiry into harm at the punishment stage will often be guess work, even when judges are convinced beyond a reasonable doubt. Courts are better equipped to decide whether harm occurred at the guilt stage. Evidence of guilt can be marshalled and analyzed and will often be so overwhelming that any rational jury would have convicted, despite the error. The same is not true at the punishment stage of trial, because then there are no "elements" of proof against which the evidence can be measured. The assessment of punishment, especially within the wide range of probation to life imprisonment, as in the present case, is inherently more subjective than the decision on guilt, and thus, it will generally be harder at the punishment stage to determine that any particular error was harmless.

Appellate courts will invest much time and effort, but still reach a host of inconsistent and questionable results if they are forced into making decisions that they are so inherently ill-equipped to make. The risk of wrongful affirmance seems great under the circumstances, and because the objecting defendant bears no responsibility for the error, the burden of retrying such cases should fall upon the State, which enacted and enforced the statute in disregard of the defendant's protest and of its own constitution.

Reversing only those cases where objection was made will avoid these problems. This approach has several advantages:

1) It avoids windfall reversals for those who failed to object and instead grants relief only to those who did what they could to avoid the harm;

2) It avoids inevitably inconsistent results between and within appellate courts;

3) It puts the responsibility for this problem on the State, where it belongs, instead of requiring the defendant to show harm, while depriving him of the only evidence that could possibly do so;

4) It establishes an objective test that judges, lawyers, litigants, and the public can understand.

We conclude with the hope that these words constitute a constructive addition to the jurisprudence of this State.

Appellant's point of error is overruled.

The judgment is affirmed.