**Leroy EARLY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–86–00448–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

March 16, 1989.

---

Brian W. Wice, Geraldo Acosta, Houston, for appellant.

John Holmes, Dist. Atty., Linda West, Asst. Dist. Atty., for appellee.

Before SAM BASS, MIRABAL and COHEN, JJ.

## OPINION

COHEN, Justice.

The Court of Criminal Appeals vacated our judgment and remanded this case for reconsideration of appellant's second point of error in light of its holding in *Rose v. State*, 752 S.W.2d 529, 552 (Tex.Crim.App. 1988) (op. on reh'g). In his second point of error, appellant argues that the trial court committed fundamental error by instructing the jury on parole law, pursuant to Tex.Code Crim.P.Ann. art. 37.07, sec. 4(c)[1]. Appellant did not object to the parole charge.

The jury convicted appellant of attempted murder with a firearm, and assessed punishment at six years confinement. The punishment range was from two to 20 years.

Appellant and the complainant, Nathaniel Nash, had known each other for over 10 years, and were former in-laws. Nash frequently visited appellant's auto body shop, and they occasionally had dinner together. The day before the shooting, appellant had informed Nash that he would no longer allow domino games at the business during working hours. The next day, Nash came to the auto body shop and was talking with James Wallace, appellant's partner in the business. Appellant testified that Nash told Wallace he was angry at appellant because of their discussion the day before, and he heard Nash say that he was going to hit appellant in the eye. Appellant then went into the room where Wallace and Nash were talking and apologized to Nash. Nash refused to accept the apology, and using profanity, said he never wanted to speak to appellant again. As appellant left the room, he saw Nash get up from where he was sitting. Appellant went to his briefcase and got a gun. Wallace confronted appellant in the waiting area of the shop and struggled with him for the gun, but Wallace fell and was unable to gain possession of it. Nash then walked into the waiting area, and appellant fired a shot toward the two men. Appellant then ran behind them and shot Nash twice more in the back. The shots damaged Nash's liver, stomach, pancreas, and spleen.

Appellant gave the gun and bullets to Wallace and later confessed to the police. As a result of his wounds, Nash was in the hospital for about two months, had to undergo surgery several times, had his spleen and part of his pancreas removed, and has become diabetic due to the loss of part of his pancreas.

At the punishment stage, Nash testified about his continuing pain due to the gunshot wounds and that he had been unable to work since being shot. Appellant's ex-wife testified that he had been violent during their marriage, in 1974 and 1975, and had threatened her with a knife and gun. A former employee of appellant's business testified that he had seen appellant threaten his son with a gun about six months before the trial. Marguerite Whitmire testified that appellant had slapped her on the face for no apparent reason once when she was at his auto body shop.

Ten witnesses testified for appellant during the punishment stage, including three ministers and several members of appellant's church. All of them testified that they knew appellant well, had never known him to be violent, and believed that he could fulfill the terms of probation if he was given probation. Several also testified that he was involved in missionary work and visited ill parishioners in the hospital, that he always held a steady job and supported his children, and that they would

---

1. Ch. 576, sec.1, 1985 Tex.Gen.Laws 2195, *amended by* ch. 66, sec. 1, 1987 Tex.Gen.Laws 170, *amended by* ch. 1101, sec. 15, 1987 Tex.Gen. Laws 3765.

help him fulfill the terms of probation. His wife testified that she did not know how she would support the children if he was sent to prison, and that he had never been violent toward her.

Here, unlike *Rose*, no additional curative instruction was given with the court's charge. In addition, appellant had no criminal record. Rose had an extensive criminal record.

Appellant was a candidate for probation and was, in fact, given a relatively light sentence by the jury. In *Rose*, a maximum sentence was a foregone conclusion, with or without a parole charge. That is not the case here, which makes it more difficult to conclude beyond a reasonable doubt that the instruction was harmless. It is noteworthy that the sentence is evenly divisible by three and is exactly triple the minimum sentence of two years. Nothing suggests that the one-third flat time instruction did not contribute to the selection of this number, and our experience suggests a reasonable probability that it did.

Thus, Tex.R.App.P. 81(b)92) requires that the judgment be partially reversed. The second point of error is sustained.

The part of the judgment assessing punishment is vacated and set aside. The cause is remanded to the trial court for a new punishment hearing. Tex.Code Crim. P.Ann. art. 44.29(b) (Vernon Supp.1988). In all other respects, the judgment is affirmed.