**Pedro Tamez HERNANDEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–87–00429–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 16, 1989.

Discretionary Review Refused Feb. 28, 1990.

Stanley Schneider, Houston, for appellant.

J. Harvey Hudson, Asst. Dist. Atty., John B. Holmes, Dist. Atty., Houston, for appellee.

Before WARREN, O'CONNOR and COHEN, JJ.

1. Ch. 576, sec. 1, 1985 Tex.Gen. Laws 2195, *amended by* ch. 66, sec. 1, 1987 Tex.Gen. Laws

## OPINION

COHEN, Justice.

Appellant pled guilty to aggravated sexual assault, and the jury assessed punishment at 20 years confinement. Appellant contends the trial court erroneously instructed the jury about parole, as was mandated at the time of this trial by Tex.Code Crim.P.Ann. art. 37.07, sec. 4(a).[1]

■ The parole charge violates the separation of powers and the due course of law provisions of the Texas Constitution. *Rose v. State,* 752 S.W.2d 529 (Tex.Crim. App.1988) (op. on reh'g). Appellant did not object to the instruction, but that does not waive the error. *Id.* at 552–53.

■ Appellant was the legal guardian of the complainant, an 11–year–old female. In his sworn, written confession, he admitted having sexual relations with the complainant beginning in the summer of 1984. At trial, appellant testified that his statement was incorrect and that he did not have sexual relations with the complainant until the end of 1985. The statement described some of the sexual assaults in detail. He admitted to 13 or 14 sexual assaults on the complainant, and he testified that in July 1986, he quit having sexual intercourse with her because he thought she was pregnant. Complainant was pregnant and gave birth when she was 11 years old.

Appellant claimed he had sexual relations with the complainant "to get back at his wife," who had an affair and left appellant for one and one-half months in 1982. Appellant admitted that if the complainant had not become pregnant, he probably would have continued the assaults.

The jury was instructed that the punishment range for the offense as charged was five years to life and a fine of up to $10,-000. The jury assessed punishment at 20 years.

Texas Rule of Appellate Procedure 81(b)(2) provides:

170, *amended by* ch. 1101, sec. 15, 1987 Tex.Gen. Laws 3765.

If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

The *Rose* court pointed to a curative jury instruction, the heinous facts of the case, and the defendant's long, violent criminal record in finding that the error made no contribution to the punishment assessed, life imprisonment. *Rose*, 752 S.W.2d at 554–555.

Here, the trial judge read jurors the statutory admonishment that they were not to consider that good conduct time might be awarded or the manner in which the parole law might be applied to appellant. Tex. Code Crim.P.Ann. art. 37.07, sec. 4(a). Unlike in *Rose*, the judge here added no further curative admonishments of his own.

Neither party mentioned the parole law instruction during voir dire or closing arguments. The State argued for a 60–year sentence, and appellant argued for probation. Unlike the defendant in *Rose*, appellant had no prior criminal record.

As in *Rose*, the facts here are egregious. Appellant assaulted the complainant at least 13 times over a two-year period, beginning when she was nine years old. When he stopped, she was a pregnant 11–year–old, who only months later became a mother.

To summarize the specific *Rose* factors, as they apply to this case, we find that the absence of a prior criminal record and the absence of an additional curative instruction support a reversal. On the other hand, the facts of the offense and the lack of discussion of parole before the jury support an affirmance. *Rose* requires us to look to the entire record, however, not to any particular formula.

A significant factor here is the instruction itself and the defendant's failure to object to it. The jury was instructed that appellant would not be paroled until the actual time served, *without* consideration of good conduct time, equalled one-third of his sentence. We assume the defense attorney did not object because he wanted the jury to know that appellant was *not* going to receive the benefit of good conduct time in determining his parole eligibility date, i.e., that he would have to serve a flat one-third of any sentence they imposed.[2] *See Gilliam v. State*, 766 S.W.2d 867, 869 (Tex.App.—Houston [1st Dist] 1989, no pet.) (defendant argued, over the State's objection, that he would have to serve a full one-third of his sentence). Presumably, this would influence the jury to give a lesser sentence, secure in the knowledge that at least one-third of it would be served in prison. *See Gabriel v. State*, 756 S.W.2d 68, 70 (Tex.App.—Houston [1st Dist.] 1988, no pet.).

The fact that the jury assessed exactly one-third of the 60 years the State sought indicates this strategy may have helped appellant, not harmed him, in this particular case. In assessing the harm of *Rose* error, this Court has looked with suspicion on punishments that were exactly triple the minimum or that were evenly divisible by three. The suspicion was that jurors tripled the punishment to account for the possibility of early parole. *See Bonner v. State*, 779 S.W.2d 81 (Tex.App.—Houston [1st Dist.], pet. pending) (15 years for murder assessed against defendant eligible for probation); *Early v. State*, 779 S.W.2d 79 (Tex.App.—Houston [1st Dist.], 1989, pet. pending) (6 years for attempted murder assessed against defendant eligible for probation). This is not such a case. The punishment assessed here is consistent with the jury having followed the instruction to disregard parole by dividing the State's requested punishment by three in order to offset the possibility that the prosecutor had requested triple the punishment she thought appropriate, in order to avoid the effect of an early parole. This is the opposite of the harm we sought to avoid in *Bonner* and in *Early*. Our analysis is speculative, of course, but that is inherent

---

**2.** No such trial strategy would be available to a defense attorney on a case for which good conduct time *was* counted in determining the first parole eligibility date.

in any determination of harmless error, a difficult task that requires us to use our experience, knowledge, and judgment to decide, as best we can, how jurors reach their verdicts. *See Gabriel,* 756 S.W.2d at 69–71.

Given the facts of the offense, the lack of mention of parole, the lack of objection, the content of the instruction given, the punishment the State sought, and the punishment the jury assessed, we find the error was harmless.

We overrule appellant's sole point of error and affirm the judgment.

O'CONNOR, J., dissents without opinion.