John Pershing JOHNSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–93–069 CR.

Court of Appeals of Texas, Beaumont.

June 7, 1995.

---

Patricia Nasworthy Saum, Houston, for appellant.

Michael Little, Dist. Atty., Steve Greene, Asst. Dist. Atty., Liberty, for State.

Before WALKER, C.J., and BURGESS and BROOKSHIRE,* JJ.

## OPINION

BURGESS, Justice.

In 1986, a jury convicted John Pershing Johnson of delivery of a controlled substance, cocaine, in an amount exceeding 400 grams [1], and assessed punishment at twenty years' confinement in the Texas Department of Corrections and a $20,000 fine. Johnson's conviction was reversed by the Court of Criminal Appeals for punishment charge error in instructing the jury on the effect of parole; so-called "*Rose* error".[2] *Johnson v. State,* 737 S.W.2d 923 (Tex.App.—Beaumont 1987), *reversed in an unpublished opinion, on remand,* 774 S.W.2d 276 (Tex.App.—Beaumont 1989), *reversed,* 797 S.W.2d 658 (Tex.Crim.App.1990). On September 21, 1987, the Circuit Court of Pulaski County, Virginia, convicted appellant of cocaine distribution. By the time the Texas Court of Criminal Appeal's mandate issued November 9, 1990, Appellant was already serving a 20–year sentence in the Virginia Department of Corrections. On January 16, 1992, the Liberty County District Attorney's Office was served with a request for disposition under the Interstate Agreement on Detainers. Johnson was delivered to the sheriff's custody in Liberty County on February 14, 1992. Several months later, Johnson moved for dismissal of the indictment because he was not tried within 180 days of his request for disposition. The motion was denied after an evidentiary hearing held November 13, 1992.

---

* Justice, Retired, Court of Appeals, Beaumont, sitting by assignment pursuant to Tex. Gov't Code Ann. § 74.003(b) (Vernon 1988).

1. On October 18, 1984, Johnson flew a plane carrying 700 pounds of nearly pure cocaine into Cleveland, Texas. The transferee was a Drug Enforcement Administration agent.

2. *Rose v. State,* 752 S.W.2d 529 (Tex.Crim.App. 1987).

The punishment phase of the trial was retried before the bench on January 6, 1993. The court sentenced Johnson to sixty years' confinement in the Texas Department of Criminal Justice, Institutional Division, and a $5,000 fine. This sentence was cumulated on the Virginia sentence. Appellant raises five points of error.

Appellant's first point complains the trial court erred in refusing to dismiss the indictment with prejudice in violation of the Interstate Detainer Act. TEX.CODE CRIM.PROC. ANN. art. 51.14 (Vernon 1979), entitled, "Interstate Agreement on Detainers," contains the following pertinent provisions:

## ARTICLE III

(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information, or complaint *on the basis of which a detainer has been lodged against the prisoner*[3], he shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint; ....

....

(c) The warden, commissioner of corrections, or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the *indictment, information, or complaint on which the detainer is based.*

(d) Any request for final disposition made by a prisoner pursuant to Paragraph (a) hereof shall operate as a request for final disposition of all untried *indictments, informations, or complaints on the basis of which detainers have been lodged*

*against the prisoner* from the state to whose prosecuting official the request for final disposition is specifically directed....

## ARTICLE IV

(a) The appropriate officer of the jurisdiction in which an untried *indictment, information, or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer* and who is serving a term of imprisonment in any party state made available in accordance with Paragraph (a) of Article V hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated; ....

## ARTICLE V

....

(b) The officer or other representative of a state accepting an offer of temporary custody shall present the following upon demand:

....

(2) a duly certified copy of the *indictment, information, or complaint on the basis of which the detainer has been lodged* and on the basis of which the request for temporary custody of the prisoner has been made.

(c) If the appropriate authority shall refuse or fail to accept temporary custody of said person, or in the event that an action on the *indictment, information, or complaint on the basis of which the detainer has been lodged* is not brought to trial within the period provided in Article III or Article IV hereof, the appropriate court of the jurisdiction where the indictment, information, or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect.

(d) The temporary custody referred to in this agreement shall be only for the purpose of permitting prosecution on the charge or charges contained in one or

---

**3.** All emphasis in this opinion is by the author unless otherwise indicated.

more untried *indictments, informations, or complaints which form the basis of the detainer or detainers **or for prosecution on any other charge or charges arising out of the same transaction . . . .***

■ Because the Interstate Agreement on Detainers is an interstate compact approved by the United States Congress and is, therefore, a federal law, it is subject to federal rather than state construction. *Cuyler v. Adams*, 449 U.S. 433, 438, 101 S.Ct. 703, 66 L.Ed.2d 641, 647 (1981). Whether it is a member state attempting to obtain an incarcerated prisoner from another member state or a prisoner demanding speedy disposition of certain charges pending in another member state, the provisions of the Agreement are triggered *only* when a "detainer" is filed with the custodial (sending) state by another state (receiving) having untried charges pending against the prisoner. *United States v. Mauro*, 436 U.S. 340, 343, 98 S.Ct. 1834, 56 L.Ed.2d 329, 336 (1978).

■ While the denial of a defendant's motion to dismiss an indictment under the Interstate Agreement on Detainers is a question of law reviewed *de novo*, the factual findings underlying the decision are reviewed on a clearly erroneous standard. *United States v. Hall*, 974 F.2d 1201, 1204 (9th Cir. 1992). The testimonial and documentary evidence indicates the State of Texas never issued a detainer for the offense of Delivery of a Controlled Substance: Cocaine, Cause Number 16,133. The sole documentary exhibit introduced into evidence during the hearing on punishment indicates that the detainer filed by Liberty County authorities was for the offense of "Delivery of Marijuana of less than 2 thousand pounds but not [sic] more than 2 hundred pounds." Since no detainer was ever filed by Liberty County authorities with regard to the Delivery of Cocaine case, the provisions of article 51.14 were never triggered. A clear reading of the pertinent provisions of article 51.14 set out above supports this construction. Clearly

the only "indictments, informations, or complaints" which are subject to dismissal with prejudice are those "on the basis of which a detainer has been lodged." The lone exception, contained in Article V, paragraph (d), permits the receiving state to prosecute non-detainer pending charges "arising out of the same transaction" as those pending charges which form the basis of the detainer. There is no evidence that the Delivery of Marijuana charge for which the detainer was issued arose out of the same transaction as the Delivery of Cocaine charge.

Based upon the record before us as well as the applicable federal case law, we cannot say that the trial court clearly erred in denying appellant's motion to dismiss the Delivery of Cocaine indictment. The record does indicate that the Delivery of Marijuana indictment was dismissed. However, without a detainer issued on the Delivery of Cocaine charge, appellant cannot avail himself of the provisions contained in article 51.14.[4] This point of error is overruled.

■ Appellant's next point reads: "The trial court erred in proceeding on a new punishment hearing instead of a new trial on guilt and punishment." The sole contention is that Article I, § 16 of the Texas Constitution provides that no *ex post facto* law, or retroactive law can stand. Hence, appellant avers TEX.CODE CRIM.PROC. art. 44.29(b) (Vernon Supp.1995) is unconstitutional. We disagree.

Appellant concedes in his brief that the Court of Criminal Appeals in *Grimes v. State*, 807 S.W.2d 582 (Tex.Crim.App.1991), held that the application of article 44.29(b) does not punish as a crime an act previously committed which was innocent when done; it does not make more burdensome the punishment for a crime after its commission; it does not deprive the appellant of any defense available according to law at the time the act was committed. Therefore, we hold that the article is not violative of the *ex post facto*

---

4. The State argues that the IAD does not apply because appellant was not tried on "an untried indictment." We need not reach that argument. The State also argues that Article 51.14 is unconstitutional because it violates the separation of powers doctrine expressed in TEX. CONST. ART. II,

§ 1, in the same manner applied to the Speedy Trial Act by the Court of Criminal Appeals in *Meshell v. State*, 739 S.W.2d 246 (Tex.Crim.App. 1987). This Court rejected this argument in *Engle v. Coker*, 820 S.W.2d 247 (Tex.App.—Beaumont 1991) (original proceeding).

clause of the United States Constitution or the *ex post facto* provision of the Texas Constitution.

Appellant further argues that because he was convicted in Virginia subsequent to his original trial but prior to his new punishment hearing, evidence of the Virginia offense and conviction was wrongly introduced because this evidence makes more burdensome the appellant's punishment and deprives him of defenses. But this very argument was rejected in *Grimes.* In *Grimes,* 807 S.W.2d at 588, in footnote 9, the Court rejected an argument that was based on TEX. GOV'T CODE ANN. § 311.022 (Vernon 1988). The Court reasoned that the Texas Government Code provided in substance that a statute is presumed to be prospective in its operation unless expressly made retrospective. Section 311.022 does not prohibit application of Article 44.29(b) to cases that were on appeal on the date of enactment since Article 44.29(b) applied prospectively in the trial courts following remand from the Court of Criminal Appeals or from the Courts of Appeals. The Court held that absent an express legislative intent to the contrary, procedural statutes control litigation from their effective date and they apply to both pending and future actions. Point of error two is overruled. *See also Collins v. Youngblood,* 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990) (applying TEX.CODE CRIM. PROC.ANN. art. 37.10(b)).

Appellant asserts in point of error three the trial court erred in sentencing the appellant to a term of years more than his original sentence. Appellant argues there exists a limitation on the power of a sentencing authority to increase the sentence after reconviction following a new trial. Appellant argues the Due Process Clause of the Fourteenth Amendment prevents increased sentences when that increase is motivated by vindictiveness on the part of the sentencing judge. Appellant relies on *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) which states at 395 U.S. at 725, 89 S.Ct. at 2080, 23 L.Ed.2d at 669:

> Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.

In *Pearce,* the Supreme Court held neither the double jeopardy provision nor the Equal Protection Clause imposes an absolute bar to a more severe sentence upon reconviction. *Id.* at 723, 89 S.Ct. at 2079, 23 L.Ed.2d at 668. The Court did, however, conclude that the Due Process Clause of the Fourteenth Amendment requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence that he receives after a new trial. Whenever a judge imposes a more severe sentence upon a defendant after a new trial, the record must affirmatively show objective information or facts concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. "The factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal." *Id.* at 726, 89 S.Ct. at 2081, 23 L.Ed.2d at 670.

Here, the record reflects that subsequent to the first sentencing proceeding, appellant was convicted in the State of Virginia for the offense of distributing cocaine. This conviction affirmatively appears in the record and the trial court heard this evidence at the second sentencing proceeding.

Moreover, in *Wasman v. United States,* 468 U.S. 559, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984), the Supreme Court held that after a defendant's successful appeal, a sentencing authority may justify an increased sentence where the increased sentence was based on an intervening conviction even for conduct preceding the first sentence. The Court reasoned that an increased sentence would be correct when relevant conduct or relevant events had occurred subsequent to the origi-

nal sentencing proceedings. *Id.* at 571–572, 104 S.Ct. at 3224, 82 L.Ed.2d at 435. In *Wasman,* Chief Justice Burger wrote:

> We conclude that any language in Pearce suggesting that an intervening conviction for an offense committed prior to the original sentencing may not be considered upon sentencing after retrial, is inconsistent with the Pearce opinion as a whole. There is no logical support for a distinction between "events" and "conduct" of the defendant occurring after the initial sentencing insofar as the kind of information that may be relied upon to show a nonvindictive motive is concerned.

*Id.*

Appellant has totally failed to prove actual vindictiveness. The trial court was well within its powers and prerogatives in assessing the increased punishment. This point is overruled.

■ Next, appellant avers the trial court erred in declaring the Texas sentence was to begin after his sentence in Virginia had been served. The version of TEX.CODE CRIM.PROC. ANN., art. 42.08 in effect at the time of the commission of the offense prohibited the cumulation of a Texas sentence with that of a sister state or federal conviction. *Hernandez v. State,* 748 S.W.2d 324, 326 (Tex.App.— Dallas 1988, pet. ref'd). However, the statute was amended in 1987, after the commission of the offense, but prior to the cumulation order. The amendment deleted language referring to each sentence being confinement in an institution operated by the Department of Corrections, effectively allowing cumulation with non-Texas sentences. Appellant argues the present cumulation order violates the constitutional prohibition against ex post facto enactments and relies upon *Hernandez.* This reliance is misplaced. In *Hernandez, both* the offense and cumulation order were *before* the 1987 amendment. Here, only the offense occurred prior to the 1987 amendment. The analysis of article 44.29(b) contained in *Grimes v. State,* 807 S.W.2d at 583 applies to article 42.08 in this situation. Appellant's fourth point of error is overruled.

■ The last point of error contends the conduct of trial counsel denied appellant the effective assistance of counsel and a fair trial. A complaint of ineffective assistance of counsel may be raised in a motion for new trial. *Reyes v. State,* 849 S.W.2d 812, 815 (Tex. Crim.App.1993). The record reflects a motion for new trial raising this issue was filed and a specific request was made by appellate counsel for a hearing on the motion. Apparently no hearing was conducted as we have no statement of facts from any such hearing. Furthermore, there is no complaint by appellant of the failure to conduct an evidentiary hearing on this motion.

■ The proper standard for determining claims of ineffective assistance of counsel is the standard adopted in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In *Strickland,* the Supreme Court adopted a two-pronged analysis for claims of ineffective assistance in the guilt-innocence stage of the trial. *Id.* at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. First, appellant must show that counsel performed deficiently. *Id.* Second, appellant must show the deficient performance prejudiced the defense. *Id.* Appellant must establish these two prongs by a preponderance of the evidence. *Moore v. State,* 694 S.W.2d 528, 531 (Tex.Crim.App.1985). When considering effectiveness of counsel in the punishment phase, the standard is whether the defendant received reasonably effective assistance of counsel. *Ex parte Cruz,* 739 S.W.2d 53, 58 (Tex.Crim.App.1987); *Ex parte Duffy,* 607 S.W.2d 507 (Tex.Crim.App.1980).

■ In the course of establishing the *Strickland* prongs, appellant must additionally rebut the presumption that counsel performed competently. *Jackson v. State,* 877 S.W.2d 768, 771 (Tex.Crim.App.1994). Appellant can rebut this presumption by showing counsel's actions were unreasonable under prevailing professional norms and were not sound trial strategy. *Id.* Furthermore, the record must support an ineffectiveness claim. *Johnson v. State,* 691 S.W.2d 619, 627 (Tex.Crim.App.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 152 (1985). When the record contains no evidence to show the reasons for trial counsel's allegedly

ineffective acts or omissions, we cannot conclude that counsel performed deficiently. *Jackson,* 877 S.W.2d at 771. A silent record does not require us to speculate on the reasons behind counsel's decisions. *Id.* Isolated errors alone do not indicate ineffective assistance. *Bridge v. State,* 726 S.W.2d 558, 571 (Tex.Crim.App.1986). No Texas court defines the right to effective counsel as the right to error-free counsel. *Hernandez v. State,* 726 S.W.2d 53, 58 (Tex.Crim.App. 1986). Lastly, all of the above standards are applied by examining, without hindsight, the totality of the representation. *Strickland,* 466 U.S. at 688–689, 104 S.Ct. at 2064, 80 L.Ed.2d at 694; *Butler v. State,* 716 S.W.2d 48, 54 (Tex.Crim.App.1986).

Appellant raises three specific complaints with regard to trial counsel's representation, *viz*:

1. Trial counsel failed to file a writ of mandamus to force the trial court to dismiss the indictment for a violation of the Interstate Detainer Act.

2. Trial counsel failed to advise appellant that the trial court could consider appellant's convictions in Virginia which has become final after the appeal of the instant case and that the trial court could consider the entire range of punishment on retrial.

3. Trial counsel failed to include in the record as a bill of exception Defendant's Exhibit Number One, an eight page affidavit of appellant, and Defense Exhibit Two, a three page agreement between appellant and the U.S. Department of Justice, which exhibits were not allowed into to [sic] evidence by the trial court.

■ With regard to alleged deficiency number one, appellant argues that if trial counsel had sought a writ of mandamus, "the issue regarding the violation of the Interstate Detainer Act could have been decided prior to the imposition of any sentence and more expeditiously than an appeal." Appellant engages in rather specious reasoning in that he equates the mere initiating of mandamus proceedings with the granting of a mandamus grounded in article 51.14 relief. Such speculation does not satisfy appellant's burden to prove deficient conduct by a preponderance of the evidence.

As for the second alleged deficiency, the record provides no evidence as to what appellant and his trial counsel discussed as to the status of the Virginia conviction, or as to the punishment range appellant was exposed to on remand. Such evidence elicited at a motion for new trial hearing could possibly have aided appellant on this issue but, as previously noted, the record indicates no hearing took place.

■ Under the third alleged deficiency, appellant argues the following:

Since the exhibits were not included in the record on appeal, Appellant is denied the right to appeal the court's ruling excluding such exhibits. Had these exhibits been included in the record, there is a reasonable probability the appellant could show how the evidence was relevant to the trial court's decision on punishment and would have resulted in a substantially lesser sentence.

Again, an evidentiary hearing on the motion for new trial with the exhibits in question in evidence would have at least placed the documents before us. Instead, we have nothing with which to make any determination as to both deficient conduct and prejudice to the defense. Appellant does not even hint at how the documents, if present in the record before us, would have shown a reasonable probability that appellant's sentence would have been less severe. *See Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. We reiterate that it is appellant's burden to rebut the presumption that trial counsel performed competently, and that a silent record does not require us to speculate on the reasons behind trial counsel's decisions. *Jackson,* 877 S.W.2d at 771. We find that appellant has failed to establish either of the two *Strickland* prongs. Point of error five is overruled. The judgment and the sentence of the trial court are affirmed.

AFFIRMED.

BROOKSHIRE, Justice (Retired), concurring.

This appeal involves a litigation that has had a longer than usual life span. The appel-

lant was tried originally in April of 1986. Appellant, at that trial, was convicted and sentenced by a jury to twenty years confinement in the State Department of Corrections. A fine of $20,000 was assessed. The offense was for the delivery of a controlled substance, cocaine, in an amount of at least 400 grams or more.

In mid-September of 1987, our Ninth Court of Appeals affirmed the judgment. Appellant filed a petition for a discretionary review and the Court of Criminal Appeals remanded the litigation to the Ninth Court to determine if the charge of the court on punishment concerning parole and good time and certain mandatory statutory instructions constituted harmful error or harmless error. Thereafter, our Ninth Court of Appeals found that the same was harmless error in June of 1989.

A second petition for discretionary review was entertained by the Court of Criminal Appeals. The Court of Criminal Appeals in November 1990, decided that the questioned and challenged punishment charge constituted reversible error and then remanded the litigation, or more correctly a part thereof, to the district court.

Thereafter, the appellant, Johnson, filed a waiver of a jury in the punishment proceedings. A pre-sentence investigation and pre-sentence report were ordered under the statute.

The trial court after hearing evidence and reviewing the pre-sentence report assessed punishment at confinement in the Texas Department of Criminal Justice, Institutional Division for sixty years and a fine of $5,000. A major point of alleged error is that the pre-sentence report included evidence and documents of appellant's later, intervening conviction for distributing cocaine in the State of Virginia. This Virginia conviction was correctly introduced before the trial judge; it was meaningfully relevant.

One of the salient, crucial facts of the original trial was that on or about October 18, 1984, the appellant flew a plane load of cocaine into Liberty County, Texas, landing at a small airport near Cleveland. At the second remand, the appellant's conviction as to punishment was remanded due to then found error in the punishment phase of the trial. The prosecuting authority offered evidence of appellant's conviction for the distribution of cocaine in Virginia which became, according to the record, final after the appellant's first trial but prior to the retrial of the appellant on the second punishment phase. The Texas indictment involving cocaine was thoroughly and completely tried on the merits to a jury. The jury found appellant guilty and determined the punishment at the first trial presided over by Judge Clarence Cain, who had since retired. The second hearing on assessing punishment was conducted by Judge W.T. Woods, who determined the punishment.

For the underlying history of the case, see *Johnson v. State*, 737 S.W.2d 923 (Tex. App.—Beaumont 1987, pet. granted); *Johnson v. State*, 774 S.W.2d 276 (Tex.App.—Beaumont 1989, pet. granted and reversed); *Johnson v. State*, 797 S.W.2d 658 (Tex.Crim. App.1990).

*The appellant not only concedes but affirmatively states in his present brief that on October 18, 1984, John Pershing Johnson flew a plane load of cocaine into this country. The cocaine weighed approximately 700 pounds and the chemical analysis of the cocaine showed it to be about 93 to 98 percent pure cocaine.*

The appellant's original defenses, inter alia, at the guilt/innocence phase of the initial trial were entrapment and mistake of fact. Appellant claimed that he thought he was working for the government and that he was relying upon an earlier immunity agreement relative to other operations in another State, being Florida. Federal drug enforcement agents arrested appellant at the Cleveland air strip. The appellant's defenses were decided adversely to him by the jury and by our Ninth Court of Appeals in the September 17, 1987 opinion.

The petitions for discretionary review were granted on the contentions and arguments that the mandatory charge and instructions to the jury on the law concerning good time and parole were predicated on an unconstitutional statute. TEX.CODE CRIM.PROC.ANN. art. 37.07, sec. 4 (Vernon Supp.1989). Section 4,

Article 37.07 (after the 1989 amendment), we perceive, took effect on the date the people voted on S.J.R. 4 on November 7, 1989 as a constitutional amendment. The voters approved S.J.R. 4 on November 7, 1989. *See* TEX. CONST. art. IV, § 11(a).

After our original opinion, the Court of Criminal Appeals held in *Rose v. State,* 752 S.W.2d 529 (Tex.Crim.App.1987) that the old Article 37.07, § 4 was unconstitutional.

The Court of Criminal Appeals in Johnson's first appeal in its unpublished, per curiam opinion and in its order of remand noted that the only contention or point of error involved in the remand was the instruction on good time and parole. The issue or task upon the first remand was for our Ninth Court of Appeals to apply the holdings of *Rose v. State, supra,* to this lengthy record. Thereafter, however, *Rose, II,* was handed down, being *Rose v. State,* 752 S.W.2d 529 (Tex.Crim.App.1987) (opinion on rehearing).

The published per curiam opinion by the Court of Criminal Appeals reported in *Johnson,* 797 S.W.2d 658, emphasized that the prosecutor's argument alone in the punishment phase which directed the jury's consideration to the effect of the parole law and good time instruction constituted reversible error even though the jury assessed a term of only five years over the minimum sentence.

The appellant, in a diligently prepared brief in this appeal at bar, now presents and argues five points of error, *the first point of error being that the trial court erred in refusing to dismiss the appellant's cocaine indictment with prejudice.* Appellant maintains that the second sentencing proceeding was allegedly in violation of the Interstate Agreement on Detainers, TEX.CODE CRIM. PROC.ANN. art. 51.14 (Vernon 1979).

On October 13, 1992, the appellant personally signed a waiver of trial by jury in a felony less than capital, in which his attorney joined and to which the state consented. This waiver was approved by the district judge presiding. This waiver of a jury trial was made in person and in writing in open court by the appellant. A pre-sentence report was ordered by the court to which order no objection was made.

In 1991, the office of the Sheriff in Liberty County caused to be issued a detainer on appellant. This detainer was sent to a correctional center in Virginia. On December 31, 1991, the appellant requested a final deposition to be made of *another indictment involving marijuana* pursuant to the Interstate Agreement on Detainers. TEX.CODE CRIM.PROC. art. 51.14. A certified letter was then sent to the office of the district attorney for Liberty County requesting that the other, separate prosecution on marijuana comply with the provisions of the Interstate Detainer Act. Appellant requested a disposition of his marijuana case only. Certain documents were then received by Liberty County on January 16, 1992. The documents that were forwarded to Liberty County from appellant, when he was in the Department of Corrections in the Commonwealth of Virginia, refer exclusively to *an untried indictment,* information, or complaint *and the resulting detainer to which the appellant replied was for the delivery of marijuana of less than 2000 pounds. It must be noted the indictment in the litigation and appeal before us is a tried indictment involving cocaine.*

In a second, additional document, *the appellant made it clear that he was requesting a final disposition of an indictment against him alleging delivery of marijuana of less than 2000 pounds.* In a separate document, the appellant wrote that his attorney of record was C.T. (Rusty) Hight whose address was 1937 Trinity Street, Liberty, Texas 77572. Attorney Hight appeared for appellant in early hearings or docket calls.

Attached to these papers concerning the detainer was a certificate of inmate status showing that John Pershing Johnson was an inmate in the Staunton Correctional Center, Staunton, Virginia, and that he was being held under a Virginia commitment the term of which was twenty years and no months and that his date of parole eligibility was July 11, 1993. Again, the detainer involved was limited solely to the charge of the delivery of marijuana. No relief was requested by the appellant concerning the tried cocaine offense. No final disposition was asked for

by appellant on the tried cocaine indictment. The marijuana indictment was separate and distinct from the cocaine indictment.

With admirable candor, the appellant places major reliance to sustain his point one on TEX.CODE CRIM.PROC.ANN. 51.14 (Vernon 1979) which provides in pertinent, governing part:

### ARTICLE III

(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint; provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

The relevant act plainly provides that in the event that an action on the indictment, which is the basis on which the detainer has been initiated or lodged, is not brought to trial within the period provided in Article III, then the appropriate court of the jurisdiction shall enter an order dismissing the complained-of indictment with prejudice. *Thus, the dismissal comes about when there is no timely action on the untried indictment which was the basis on which the detainer has been activated.* The record here is glaringly clear that the appellant was complaining about the marijuana indictment. The cocaine indictment had been fully tried and the guilt/innocence phase had been affirmed. The verdict of guilty stood firmly. It was only the punishment phase that was to be re-heard.

The first punishment phase itself had been tried. A limited, partial remand by the Court of Criminal Appeals did not make *the tried cocaine indictment become untried.*

Article 51.14 entitled "Interstate Agreement on Detainers" contains, inter alia, Articles I and III. Articles I and III provide that the detainers must be based on untried indictments. In fact, the Agreement solemnly declares that it is the policy of the party states to encourage the expeditious and orderly disposition of the proper status of any and all detainers based on untried indictments, information, or complaints. Article III specifically reaffirms that, whenever during the continuance of the term of imprisonment, there is pending in any other party state any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court written notice of his desires.

The guilt/innocence phase of the trial on the cocaine indictment, finding the appellant guilty, is still in force and effect. In *Grimes v. State,* 807 S.W.2d 582 (Tex.Crim.App. 1991), it was held that the enactment and the effect of TEX.CODE CRIM.PROC. art. 44.29(b) (Vernon Supp.1995)—which Article 44.29(b) provides that if the Court of Criminal Appeals awards a new trial to a defendant only on the basis of an error or errors made in the punishment phase of the trial—then the cause will stand as if it would have stood in case the new trial had been granted by the court below, except that the court shall commence the new trial as if a finding of guilt had been returned and proceed to the punishment stage of the trial. Thus, clearly, the cocaine indictment as to the appellant's guilt stands tried and affirmed by ineluctable logic. The cocaine conviction was prior to his request for a final disposition of the serious marijuana indictment lodged against the appellant. *Thus, the appellant's case simply does not come within the purview or ambit of the provisions of the Article 51.14, the Interstate Agreement on Detainers.*

Importantly relevant is the case of *Carchman v. Nash,* 473 U.S. 716, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985). In *Carchman,* the Unit-

ed States Supreme Court held that a detainer based on probation violation charges is not governed by or determined by the Interstate Agreement on Detainers. The Supreme Court held that Article III of the Interstate Agreement on Detainers awards to a prisoner incarcerated in one state *the right to demand the speedy disposition of an untried indictment that is the basis of a detainer lodged against him by another state.* The Supreme Court, in an opinion by Justice Blackmun, reasoned that the paramount beginning consideration was the language of the Agreement being Article III thereof. Article III by its own terms applies to detainers based on "any untried indictment, information, or complaint."

*The correct interpretation of the adjective "untried" refers to matters that can be brought to full trial.* Here, without objection and with tacit approval, the appellant engaged in a second proceeding on punishment only. Appellant, here, was not brought to a full trial. He could not be brought to a full trial. The Federal High Court also reasoned that Article III enables a prisoner to require the state lodging the detainer to drop the untried charge or untried indictment in certain circumstances. Using this method the prisoner can clear his record of detainers that are based on unsubstantiated charges. But before us, there is no unsubstantiated charge because the appellant has been found guilty of the cocaine offense which verdict of guilty still stands. *Thus, the plain language of the Interstate Agreement makes it inapplicable to this case. Appellant, in fact, obtained his requested relief. The marijuana indictment was dismissed.* Point one is overruled.

Appellant's point of error two reads: "The trial court erred in proceeding on a new punishment hearing instead of a new trial on guilt and punishment." The sole basis of the arguments and contentions in point two is that Article I, § 16 of the Texas Constitution provides that no *ex post facto* law, or retroactive law can stand. Hence, appellant avers TEX.CODE CRIM.PROC.ANN. art. 44.29(b) (Vernon 1995) is unconstitutional. We disagree.

*Calder v. Bull,* 3 Dall. 386, 1 L.Ed. 648 (1798) was and is an important landmark decision to delineate those legislative enactments which violate the *ex post facto* clause of the United States Constitution. The legislative enactments that were held violative were set out as follows: (1) every law that makes an action done before passing of the law, and which was innocent when done, criminal; and punishes such action, (2) every law that aggravates a crime, or makes it greater than it was, when committed, (3) every law that changes the punishment and inflicts a greater punishment than the law annexed to the crime, when the crime was committed, (4) every law that alters the legal rules of evidence and receives less or different testimony than the law required at the time of the commission of the offense in order to convict the offender. *Calder v. Bull,* 3 Dall. at 390, 1 L.Ed. at 650.

The appellant, in a well-written brief, forcefully argues that TEX.CODE CRIM.PROC. art. 44.29(b), which appellant avers became effective on August 31, 1987, is an *ex post facto* law as to this appellant. This argument is made on the basis that the appellant's trial was fully conducted before the effective date; but, nevertheless, the Article 44.29(b) is an *ex post facto* law as to his punishment trial because it was effective before his conviction as to punishment was reversed on appeal but after his trial on the merits and after the date of the cocaine offense.

The appellant concedes in his brief that the Court of Criminal Appeals in *Grimes v. State,* 807 S.W.2d 582 (Tex.Crim.App.1991), held that the application of Article 44.29(b) does not punish as a crime an act previously committed which was innocent when done; it does not make more burdensome the punishment for a crime after its commission; it does not deprive the appellant of any defense available according to law at the time when the act was committed. Therefore, we hold that the article is not violative of the *ex post facto* provision of the Texas Constitution.

Simply put, we think that this second point of error has been clearly and squarely decided against the appellant in *Grimes v. State, supra.* And upon this record, we determine that the application of Article 44.29(b) to the appellant is not prohibited by the *ex post facto* clause of the U.S. Constitution or the *ex*

*post facto* provision of the Texas Constitution. And we determine this article was properly applied to this appellant whose case was originally tried fully and completely on the merits before the enactment of this statute and whose case was subsequently reversed on appeal as to punishment only after the statute came into force and effect.

Appellant further argues that because he was convicted in Virginia subsequent to his original trial but prior to his new punishment hearing that this evidence of the Virginia offense and conviction was wrongly introduced because this evidence makes more burdensome the appellant's punishment and deprives him of defenses. But this very argument was rejected and disapproved in *Grimes*. In *Grimes* 807 S.W.2d at 588, in footnote 9, the Court rejected the argument that was based on TEX. GOV'T CODE ANN. § 311.022 (Vernon 1988). The Court reasoned that the Texas Government Code provided in substance that a statute is presumed to be prospective in its operation unless expressly made retrospective. Section 311.022 is not in conflict with the application of Article 44.29(b) to cases that were or are now on appeal since Article 44.29(b) applied prospectively in the trial courts after the causes have been remanded from the Court of Criminal Appeals or from the Courts of Appeals. The Court reasoned and held that absent an express legislative intent to the contrary, procedural statutes control litigation from their effective date and they apply to both pending and future actions. Point of error two is overruled. *See and compare Collins v. Youngblood,* 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990).

Appellant asserts in his point of error three that the trial court erred in sentencing the appellant to a term of years more than his original sentence. At the initial trial on the merits the appellant was sentenced by the jury to twenty years in the Texas Department of Corrections, and assessed a fine of $20,000. As noted, the Court of Criminal Appeals reversed the conviction for punishment error. Appellant had petitioned the Court of Criminal Appeals for a new hearing on punishment because of the court's charge on punishment at the trial on the merits; he

prevailed. A remand on punishment was granted him. Appellant in his brief admittedly waived a jury for the subsequent hearing on punishment. Appellant does not attack the validity of the waiver. The trial court assessed appellant's punishment at 60 years and a fine of $5,000. The trial court was well within its powers and prerogatives in assessing the increased punishment.

But the appellant argues that there exists a limitation on the power of a sentencing authority to increase the sentence after reconviction following a new trial. However, there was no actual readjudication of guilt under this record. There was no full new trial. The conviction on the guilt/innocence phase is still in force. Appellant states that the limitations on the power of the sentencing authority are based on the Due Process Clause of the Fourteenth Amendment *which prevented increased sentences when that increase was motivated by vindictiveness on the part of the sentencing judge.* Appellant relies on the "Vindictiveness Doctrine" to sustain the point of error. We disagree. The appellant relies upon *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). The brief of the appellant quotes from the *Pearce* case:

> Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.

*Id.* at 725, 89 S.Ct. at 2080, 23 L.Ed.2d at 669.

Importantly, in *Pearce,* the Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment does not impose an absolute bar to a more severe sentence upon reconviction and neither does the Double Jeopardy Clause of the Fifth Amendment impose an absolute bar to a more severe sentence upon reconviction. *Id.* at 723, 89 S.Ct. at 2079, 23 L.Ed.2d at 668. The Court

did, however, conclude that the Due Process Clause of the Fourteenth Amendment requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence that he receives after a new trial.

Justice Stewart held and concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the record must affirmatively show objective information or facts concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. Justice Stewart wrote:

> And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

*Id.* at 726, 89 S.Ct. at 2081, 23 L.Ed.2d at 670.

Here, the record clearly reflects that subsequent to the first sentencing proceeding, the appellant was convicted in the State of Virginia for the offense of distributing cocaine. This conviction for the offense of distributing cocaine in Virginia affirmatively appears in the record and the trial court heard this evidence at the second sentencing proceeding.

Appellant's reliance upon *North Carolina v. Pearce* is not sound.

The presumption of vindictiveness is clearly inapplicable to this appeal. The record before us reflects that a jury sentenced appellant following his conviction in the first trial. Upon remand for the new punishment hearing, appellant chose to have the trial court, not a newly impaneled jury, assess his sentence. The presumption of vindictiveness is inapplicable under these circumstances because different sentencers assessed the varying sentences. *Texas v. McCullough,* 475 U.S. 134, 140, 106 S.Ct. 976, 979, 89 L.Ed.2d 104, 111–112 (1986). The Court in *McCullough* explained:

> In such circumstances, a sentence "increase" cannot truly be said to have taken place. In Colten v Kentucky, supra, [407 U.S. 104, 32 L.Ed.2d 584, 92 S.Ct. 1953 (1972)], which bears directly on this case,

we recognized that when different sentencers are involved,

> "[i]t may often be that the [second sentencer] will impose a punishment more severe than that received from the [first]. But it no more follows that such a sentence is a vindictive penalty for seeking a [new] trial than that the [first sentencer] imposed a lenient penalty." Id. [*Colten v. Com. of Kentucky* 407 U.S. 104] at 117, 32 L Ed 2d 584, 92 S Ct 1953[, 1960–61 (1972)].

*Id.* at 140, 106 S.Ct. at 979, 89 L.Ed.2d at 112.

Moreover, in *Wasman v. United States,* 468 U.S. 559, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984), the Supreme Court held that after a defendant's successful appeal, a sentencing authority may justify an increased sentence where the increased sentence was based on an intervening conviction even for conduct preceding the first sentence. The Court reasoned that an increased sentence would be correct when relevant conduct or *relevant events had occurred subsequent to the original sentencing proceedings. Id.* at 571–572, 104 S.Ct. at 3224, 82 L.Ed.2d at 435.

In *Wasman,* Chief Justice Burger wrote:

> We conclude that any language in Pearce suggesting that an intervening conviction for an offense committed prior to the original sentencing may not be considered upon sentencing after retrial, is inconsistent with the Pearce opinion as a whole. There is no logical support for a distinction between "events" and "conduct" of the defendant occurring after the initial sentencing insofar as the kind of information that may be relied upon to show a nonvindictive motive is concerned.

> *Id.*

Further and importantly, *Chief Justice Burger pronounced that the underlying philosophy of modern sentencing is to take into account the person as well as the crime by considering information concerning every aspect of a defendant's life. See Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). *Here, the first sentencing authority as to the assessment of years was the trial jury. The presumption of vindic-*

*tiveness doctrine does not apply.* Appellant has totally failed to prove actual vindictiveness. Point of error three is overruled.

Next, appellant avers that the trial court erred in declaring that appellant's state sentence was to begin after his sentence in Virginia had been served. The record before us reflects the following as the entire colloquy surrounding the "stacking" of sentences issue:

> [The State]: Judge, I would like to make a request that the sentence in this case be stacked on top of the sentence handed down in the Circuit Court of Pulaski County, Virginia, being Cause Number 86158, Commonwealth of Virginia versus John Pershing Johnson. That this sentence be stacked on top of that sentence.
>
> [Defense Counsel]: Judge, we would object. And we would also like this judgment to reflect that this defendant be given credit for all the time he's spent in custody since his arrest on these charges on November 6, 1985.
>
> [The State]: I am going to object to that because part of that time he was not— there was no hold on him by the State of Texas. He was paroled out at one point.
>
> [Defense Counsel]: That is incorrect. He was arrested on these charges on November 6, 1985.
>
> The Court: That will be up to the Parole Board, I believe, to make those considerations. But this Court orders that the sentence in this case commence at the time in Cause Number 86185 in the Circuit Court of Paliske (sic) County, Commonwealth of Virginia, shall expire and terminate.
>
> [Defense Counsel]: Please note our objection, Your Honor.
>
> The Court: All right.

In order to preserve error, if any, for review, a timely and specific objection must be followed by an adverse ruling. TEX. R.APP.P. 52(a). *See Wallis v. State,* 830 S.W.2d 674, 678–679 (Tex.App.—Beaumont 1992, no pet.). The following discussion contained in *Lankston v. State,* 827 S.W.2d 907, 909 (Tex.Crim.App.1992), is highly instructive:

> The standards of procedural default, therefore, are not to be implemented by splitting hairs in the appellate courts. As regards specificity, all a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it. Of course, when it seems from context that a party failed effectively to communicate his desire, then reviewing courts should not hesitate to hold that appellate complaints arising from the event have been lost. But otherwise, they should reach the merits of those complaints without requiring that the parties read some special script to make their wishes known.

In the instant case, it is almost impossible to determine what defense counsel was making "objection" to. As we read the portion of the record reproduced above, the topic under discussion was whether or not appellant was eligible for credit for time served. Following the trial court's "stacking" of the state sentence upon the federal sentence, defense counsel requested the trial court to "note our objection." Objection to what, or on what basis we have no clue. Furthermore, it is not entirely clear that defense counsel received an adverse ruling in that the trial court's reply was, "[a]ll right." The "objection" was fatally broad and general. No basis for the objection was revealed. Under the standards of procedural default elaborated upon by the Court in *Lankston,* we find that appellant has not preserved appellate review of his fourth point of error. It is therefore overruled.

Point of error five contends that the conduct of trial counsel denied appellant effective assistance of counsel and a fair trial. In the appellant's brief, in his argument under point of error five, he concedes that he has the burden to show that trial counsel's performance was deficient and that this deficiency, in turn, requires a showing that the counsel made errors that were so serious that he was not functioning as the type of counsel guaranteed to a defendant by the Sixth

Amendment and also appellant must show that the deficient performance and deficiencies prejudiced his defense or defenses and lastly that the deficiencies must show that the counsel's errors were so serious and harmful as to deprive this appellant of a fair trial with a reliable result. In addition thereto, the appellant concedes that he must show that there exists a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different. *A reasonable probability is deemed to be a probability sufficient to undermine confidence in the outcome.* Appellant relies on *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

First, the appellant charges trial counsel with failure to file a writ of mandamus to force the trial court to dismiss the indictment for a violation of the Interstate Detainer Act. As noted above, the basic cocaine indictment has been tried to a conclusion on the merits and the result of the verdict of guilty on the first phase of the trial on the merits still stands. The appellant asked for the lifting of the detainer only as to the marijuana charge which was dismissed. Again as noted above, this litigation involves a plane load of virtually pure cocaine flown in by the appellant from another country into Liberty County, Texas. Appellant charges trial counsel with failure to advise appellant that the trial court could consider appellant's conviction in Virginia. The Virginia conviction had become final and the trial court could consider the entire range of punishment on a second proceeding under this record. There exists, under this record, no reasonable probability sufficient and adequate to destroy confidence in the outcome.

In his argument, the appellant contends that trial counsel did object to the admissibility of the Virginia conviction but failed to bring forward documentation to show that the conviction was not final. However, appellant concedes that some nature of writ of habeas corpus had been filed thus clearly indicating a collateral proceeding involving and assaulting a final judgment.

Appellant makes other speculative arguments to support his point five. Upon review and with deference, *we determine such speculation is not a sound basis to sustain a point urging ineffective assistance of counsel. Such contentions must be affirmatively shown. Hawkins v. State,* 660 S.W.2d 65 (Tex.Crim.App.1983). There is no affirmative evidence in the record that trial counsel did not advise the appellant that the Virginia conviction could be used as a part of his personal history and criminal record or that the trial court might consider the full range of punishment.

Concerning the contention involving the 180 day rule, it is significant that the second trial counsel's first motions were for discovery and for the necessity of a resulting continuance or delay of the second punishment hearing. Even the Detainer Act specifically empowers the trial court to grant these reasonable and necessary motions. The state at all previous settings had announced "Ready" and had brought the matter to a hearing. In fact, the record reveals that the state announced "Ready" at every setting, some of which were well within the 180 day limitation and did so in good faith.

The record reflects a lack of evidence that trial counsel failed to advise the appellant: (1) to accept the state's plea bargain, if any, and, (2) that the Virginia conviction could be used as part of his prior criminal record or, (3) that the trial court might consider and had a right to consider the full range of punishment. On these three contentions there exists no evidence that trial counsel failed. The record does reflect that trial counsel argued vehemently on behalf of appellant that the evidence that harmed the appellant was inadmissible and counsel below also ably presented the *Pearce* case and argued that under *Pearce* the trial court was restricted to the very same punishment originally assessed. Although we disagree with appellant's interpretation of *Pearce;* nevertheless, the same was ably argued below by his lawyer.

It should be noted that there is probative evidence that the conviction for the distribution of cocaine in Virginia had become final because the appellant himself testified that a writ of habeas corpus had been filed. The trial court observed that such a writ implies

finality of judgment. No exception was taken to this ruling.

Because of the chronology of events, appellant's trial counsel could not have avoided the rationale and holding in *Kingsley v. State,* 834 S.W.2d 82 (Tex.App.—Dallas 1992, pet. ref'd). There, the court held that because Article 44.29(b) mandates a new trial or new hearing on the punishment phase, all convictions that become final before the beginning date of the new trial are prior convictions and therefore admissible under Article 37.07, § 3(a) (Vernon Supp.1995).

A plain reading of Article 37.07, § 3(a) provides that those convictions which become final while the original underlying case, as here, was on appeal become part of the defendant's or the appellant's prior criminal record for the purposes of the new trial on sentencing or the second sentencing proceeding.

### The Plea Bargain Issue Revisited

The appellant's brief makes only one reference to the record as to the matter of trial counsel's discussing a plea bargain offer with his client. That dialogue took place at a hearing in open court that was held on August 5, 1992. Immediately thereafter, at the request of appellant's counsel, the hearing was continued to the 31st of August and the record clearly reflects that that was the date that second trial counsel requested to complete his discovery and to have time to read the statement of facts of the original trial on the merits. Thus, there is no evidence to show that Counselor Wallace failed to apprise his client of any plea bargain offer. The details of the plea bargain are not revealed; it may have been rejected by appellant. Counsel and client had ample time to consider and discuss any plea bargain matter.

The record shows that the second sentencing proceeding began on November 13, 1992, at which hearing the appellant, Mr. Johnson, was called to the stand by his own counsel and willingly testified on his own behalf.

The last charge or complaint against trial counsel (leveled by appellate counsel) was that trial counsel failed to include in the record as a bill of exception Defendant's Exhibit No. 1, being an eight page affidavit made by the defendant himself, and Defendant's Exhibit No. 2 alleged to be a three page agreement between the appellant and the United State's Attorney in Florida. The appellant took the stand at the November hearing and also at an additional, later hearing in January 6, 1993, *and he could have certainly testified as to anything that he had included in his own affidavit.*

*But the theory of admissibility of these two excluded exhibits according to the appellant's brief was to show the trial court that there was newly discovered evidence which had not been raised at the original trial on the merits. But then the appellant admits that the Appellant's Exhibit No. 2 had been proffered at the previous trial on the merits several years ago; thus it could not be newly discovered evidence.* But, we perceive, that the trial court did consider Defendant's Exhibit No. 2, even though it was clearly not newly discovered evidence. The exhibit was an agreement between the appellant and the United State's District Attorney's Office for the Southern District of Florida that was signed some nine months prior to this underlying offense having been committed. Clearly the Defendant's Exhibit No. 2 was proffered as evidence at the appellant's original trial; it was old evidence—old by a good number of years.

In connection with these exhibits, we do not perceive that trial counsel performed below standard. If such a failure to make a bill of exception constitutes anything, it constitutes an isolated mistake. Such an isolated mistake does not constitute ineffective assistance in the light of counsel's total performance. *Ingham v. State,* 679 S.W.2d 503 (Tex.Crim.App.1984).

It was shown at the second sentencing hearing that the appellant had claimed at the original trial that he had talked with a Dave Ledford and that appellant thought that Ledford had some sort of an unproven association with a DEA agent. But the appellant admitted at the second sentencing hearing that he had had a falling out with Ledford and that he, the appellant, had never talked to any DEA agents. This alleged defense

was hammered out, fully tried out, and decided adverse to the appellant during the original trial on the merits and the appeals that followed concerning the guilt/innocence phase. Appellant has lost on the immunity and entrapment defense at three levels—one at trial, two on appeal.

Applying the totality of representation standard, we definitely conclude that trial counsel's performance was that of competent counsel rendering reasonably effective assistance. Trial counsel presented and ably urged and argued numerous motions. He ably argued the issues involved pursuant to Article 44.29(a). He ably argued and demonstrated competent familiarity with *North Carolina v. Pearce, supra,* and he effectively conducted the appellant's defense evidence on punishment. Appellant's last point of error is overruled. The judgment and sentence of the trial court are affirmed.

After our original opinion of September 17, 1987, the Court of Criminal Appeals handed down *Rose v. State,* 752 S.W.2d 529 (Tex. Crim.App.1987) (opinion on rehearing). In *Rose,* Judge Clinton held that the instruction on the law of parole in the court's charge delivered pursuant to the mandate in the then Article 37.07, § 4(a), V.A.C.C.P. was unconstitutional. This holding was, according to Judge Clinton, based solely on the constitution and laws of the State of Texas. It was further held that the instruction as well as the mandating statute were both unconstitutional. The opinion on the appellant's (Rose's) petition for discretionary review held that the legislative mandate contained in the then Article 37.07, § 4(a) was an impermissible attempt by the legislature to direct the judicial department to interfere with the exercise of powers of the Board of Pardons in the executive department.

Thus the writer of *Rose* concluded that the article offended the separation of powers doctrine in Article 2, § 1. The author of the *Rose* opinion further opined that under the instruction, the risk that punishment would be based on extraneous considerations was and is intolerable to a society that constitutionally demands concepts of fundamental fairness. Therefore, Judge Clinton held that the then Article 37.07, § 4(a) along with the instruction violated Article 1, §§ 13, 19 of the Texas Constitution.

However, in *French v. State,* 830 S.W.2d 607 (Tex.Crim.App.1992) the Court granted the appellant's petition for discretionary review to address the constitutionality of the parole law instruction subsequent to the Constitutional Amendment. The appellant, French, contended that the amended Article 37.07, § 4, V.A.C.P., enacted in 1989 pursuant to the amendment of Article IV, § 11(a) of the Texas Constitution is unconstitutional because the same violates Article 1, §§ 13 and 19 of the Texas Constitution.

The Court of Criminal Appeals then observed (as noted in *Oakley v. State,* 830 S.W.2d 107 (Tex.Crim.App.1992)) that it held that the amendment to Article IV, § 11(a) removed the due course of law constraints that had plagued the former Article 37.07, § 4. Also, in *French, supra,* the court reaffirmed its decision in *Grimes v. State, supra,* and the *French* court reaffirmed its adoption of the analysis set out in *Collins v. Youngblood,* 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990), in addressing and analyzing an *ex post facto* challenge, concluding that the amended and revised Article 37.07, § 4 was not prohibited by the *ex post facto* provision of the Texas Constitution.

Clinton, Judge, dissented in *French* even after the people of Texas amended their State Constitution.

### The Rose Opinion by Judge Clinton and its Troublesome Aftermath

The words and the constructive comments written by Justice Cohen in *Gabriel v. State,* 756 S.W.2d 68 (Tex.App.—Houston [1st Dist.] 1988, no pet.) are laudable, enlightening, and pragmatic. Judge Cohen observed that the problems and difficulties facing Courts of Appeals when confronting the Rose decision are perplexing and piercing. Judge Cohen noted that whether the question of the parole charge (before the recent constitutional amendment) is harmless had proved to be one of the most difficult and least objective decisions that intermediate Courts of Appeals are called upon to decide.

### The Problems of "Ineffective Counsel" Raised on Direct Appeal

On the issue of ineffective counsel, the first concurring opinion of Justice Maloney in *Jackson v. State,* 877 S.W.2d 768 (Tex.Crim. App.1994) deserves the most serious consideration. Judge Maloney endorses the concept that *as a general rule* the issue of ineffective assistance of counsel is not well suited to be presented on direct appeal. Experience in our Ninth Court proves him right. Judge Maloney reasoned that *this general rule is valid because a trial record is generally insufficient to address claims of ineffective assistance of counsel in light of the "strong presumption that [trial] counsel's conduct falls within the wide range of reasonable, professional assistance."*

Judge Maloney's first concurring opinion proposes that a record would be generally well developed in the context of a hearing held in relation to an application for writ of habeas corpus.

However, in place of having a separate cause of action in the nature of an application for habeas corpus, it might be reasonably prudent to consider that when the appellate attorney for a defendant claims ineffective assistance of counsel at trial, that then a proper method or procedure should be put in place whereby the appellate attorney as well as the prosecuting attorney could conduct a hearing examining among other witnesses, the trial counsel, thus giving the trial counsel an opportunity to explain and defend his actions and his trial strategies. Then, the same trial judge could make relevant and governing findings of fact and draw conclusions of law on the claim of ineffective assistance of counsel. This hearing and its record would put an appellate court in a much better position to pass on the effectiveness of counsel. Under the present practice on direct appeal, the trial counsel has no opportunity to explain any of his acts or omissions. The defendant's appeals lawyer has an unrestricted "field day" castigating trial counsel. This set-up makes the appellate court's work most difficult; the appeals court must decide the issue in the dark without hearing from trial counsel.

As Judge Maloney stressed in his first concerning opinion in *Jackson, supra,* an ordinary trial record is directed to the issues of guilt/innocence and punishment and, generally, an intermediate appellate court reviews and analyzes that record with an eye focused upon errors allegedly committed that are germane to those two basic issues. Judge Maloney demonstrates excellent insight when writing that in order to effectively pass upon an issue of ineffective assistance of counsel, a record that zeroes in on the conduct of trial counsel should be developed to get a balanced, sufficient record. *The trial counsel ought to be given at least the opportunity to explain any alleged acts or omissions said to be ineffective assistance.*

A habeas corpus proceeding would result in a separate judicial proceeding at a much later date when memories have faded somewhat and would ordinarily and probably take place before a different trial judge who did not preside over the underlying trial on the merits. That second trial judge at a later date would be in an inferior position to make findings and conclusions after a habeas corpus proceeding with the accompanying passage of time.

If the issue of ineffective assistance was presented timely and quickly and in a fresh manner before the original trial judge, that judge's finding of fact and conclusions of law, it is submitted, would be more accurate and credible. Judge Maloney is not satisfied with a "cold record". He should not be satisfied. But a habeas corpus record would be "colder" than a fresh, hot record made very near to the time of the trial on the merits.

Thus, this writer submits that as soon as the appellate counsel for the defendant decides to present points of error involving alleged ineffective assistance of counsel, some mechanism should be put in place to authorize (pending and during the direct appeal without penalty to the defendant or disadvantage to the defendant) a hearing to develop fully the issues of ineffective assistance of counsel. This method would also save judicial manpower and court time and would be much more economical than a separate habeas corpus proceeding.

Indeed, TEX.R.APP.P. 80(b)(c) provide and empower the Courts of Appeals to make *any other appropriate order as the law and the nature of the case may require.* The substantive law on the question of ineffective assistance of counsel and the nature of the case and the nature of the record on appeal of the case on this difficult and thorny question require and certainly permit an intermediate appellate court to order an appropriate, adequate, sufficient and searching hearing below before the same trial judge, if available at the earliest practical time.

In a correctly reasoned opinion, Chief Justice Evans in *Schaired v. State,* 786 S.W.2d 497 (Tex.App.—Houston [1st Dist.] 1990, no pet.), held that the First Court of Appeals had the authority to abate an appeal and to require an evidentiary hearing in an appropriate case in which appeal the issue of ineffective assistance of trial counsel is raised. Schaired's affidavit stated that his own trial lawyer advised him to go to the jury for punishment in the event that he was found guilty because according to Schaired's affidavit his trial lawyer told him that his trial judge was "generally regarded by defense attorneys as the toughest sentencer in Harris County."

Schaired seriously contended on appeal and swore that on the day that his case came to trial and was set for jury selection, his trial lawyer told him that a visiting judge would preside over his trial and that the visiting judge had a reputation of being a "much more moderate sentencer." Schaired further stated that his trial lawyer had advised him that if the jury found him guilty while the visiting judge was presiding, that Schaired should change his election on punishment and let the visiting trial judge assess his punishment.

Schaired further swore that he asked his trial lawyer if there was any chance that he would be sentenced by the regular trial judge if he did change his election and his lawyer assured Schaired, according to Schaired's contentions, that there was no such chance. Further, Schaired swore that his trial lawyer had advised him that if the visiting trial judge presided over the trial then the same visiting trial judge, rather than the regular judge, would be the jurist to assess punishment.

However, after Schaired's conviction, his case was reset so that a pre-sentence investigation report could be conducted. *Schaired swore that he was surprised when he came back to court for sentencing and had to face the regular trial judge who assessed his punishment at 50 years confinement.* Thus, the issue of ineffective assistance and, indeed, erroneous assistance of trial counsel were clearly presented to the First Court of Appeals. Chief Justice Evans by necessary implication held that such an abatement and a pursuant evidentiary hearing on that issue before the district court could be ordered by the First Court of Appeals under Rule 80(c). Definitely the power and prerogative to order an abatement and an evidentiary hearing on the issue of ineffective assistance were clearly vested in the Court of Appeals.

But Schaired's motion to abate was denied because of the existence of an affidavit of the visiting judge. The visiting judge's affidavit stated that the visiting judge might or might not have rendered the same sentence as the regular trial judge depending upon the visiting judge's review of the contents of the pre-sentence investigation report.

Chief Justice Evans concluded and squarely held that such an evidentiary hearing on the issue of ineffective assistance of trial counsel could certainly be ordered by his court; nevertheless, such a hearing would not be ordered in Schaired's case because such a hearing would not assist the First Court of Appeals in deciding the issue.

This writer submits that a hearing under TEX.R.APP.P. 80(c) is a superior, more reliable, and more economical solution to this thorny issue than a separate, later application for writ of habeas corpus proceeding.

### Issues Unresolved in the Court's Opinion

It must be born in mind that the Court of Criminal Appeals was aware that Johnson "attempted to show entrapment and mistake of fact" at his initial trial on the merits. This awareness is shown in its opinion at 797 S.W.2d 658 (1990). The Court declined to remand the cause on these defensive mat-

ters. Appellant offered no evidence at the first punishment hearing.

Before the Texas Court of Criminal Appeals' mandate was issued in November of 1990, the Circuit Court of Pulaski County, Virginia, *had convicted the appellant of cocaine distribution.* The Virginia conviction was in September, 1987. Thus, by November of 1990, the appellant had begun to serve a 20 year sentence in a Virginia correctional facility in Staunton, Virginia.

The other opinion fails to state that the record reflects that Johnson's first designated attorney wanted the case continued and held on the docket and thereafter, a second trial attorney for Johnson actually moved for additional continuances to educate himself concerning the record made at the first jury trial on the merits. Although, the other opinion cites Article III of the Detainer Act specifically dealing with any untried indictment information or complaint, *our Ninth Court fails to deal with this issue by neglecting or rather refusing to state whether the indictment relevant to the cocaine offense was a tried indictment or an untried indictment*—thus, placing in limbo virtually any indictment (though fully tried on the merits in the proper Texas bifurcated procedure including a resulting judgment and sentence)—as to whether that is a tried or untried indictment; if at a later time an appellate court (such as the Texas Court of Criminal Appeals) orders a rehearing of the punishment phase. Thus, leaving in a quandary (in such a procedural situation) what the rights of the defendants are and what the rights of the prosecution are under the Interstate Agreement on Detainers. TEX.CODE CRIM.PROC.ANN. art. 51.14 (Vernon 1979).

The defendants as well as the prosecutors are entitled to have this crucial matter decided. And the briefs of the parties justify, if not require, a determination or holding by our Ninth Court of Appeals. As noted above, in my opinion, the cocaine indictment was and is a tried indictment.

The author of the majority opinion, while citing the statute using the term "untried indictment" but failing to determine what is or what is not a tried or an untried indictment, necessarily leaves an implication that the cocaine indictment here is an untried indictment.

Copied in the Court's opinion is Article IV providing that the appropriate officer of the jurisdiction, in which *an untried indictment is pending,* shall be entitled to have a prisoner against whom the officer has lodged a detainer made available to the officer in accordance with Paragraph (a) of Article V.

Note further that the majority opinion clearly concludes and holds that whether a member state is attempting to obtain an incarcerated prisoner from another member state or whether an incarcerated prisoner demanding speedy disposition of certain *charges* pending in another member state, that provisions of the Agreement are triggered only when a detainer is filed with the custodial state (sending) by another state (receiving) *having untried charges pending against the prisoner.* This use of the term *"charges",* as here, is very unfortunate and confusing.

Thus, the Ninth Court attempts to change an untried indictment into an untried charge thus attempting to make applicable the Interstate Agreement on Detainers even against a fully tried indictment.

The other opinion cites *United States v. Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978). The *Mauro* case was consolidated with *United States v. Ford,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978). These consolidated cases construe the Interstate Agreement on Detainers.

The Interstate Agreement on Detainers consists of several different sections. Section two contains and sets out the Agreement as adopted by the United States and by other member jurisdictions. Two of the respondents, Mauro and Fusco, were indicted for criminal contempt in the United States District Court for the Eastern District of New York in November of 1975. At the time of their indictments, both Mauro and Fusco were serving state prison sentences in New York correctional facilities. Then, on November 5, 1975, the United States District Court issued separate writs of habeas corpus ad prosequendum directing that the wardens of the these state prisons (where Mauro and

Fusco were incarcerated) to produce them before the United States District Court on November 19, 1975.

Thereafter, Mauro and Fusco were arraigned in the United States District Court at which time each entered pleas of not guilty. Then, following their arraignment, the United States District Court *ordered them held and retained in federal custody at a federal correctional center.* In early December, 1975, both respondents again appeared before the United States District Court. The purpose of this appearance was for setting a trial date.

The United States District Judge set dates of trial on the untried federal indictments and then the District Judge noted certain crowded conditions at the Federal Metropolitan Correctional Center and then directed that Mauro and Fusco be returned to their respective state prisons until shortly before their initial trial on the merits of their respective federal indictments.

When their cases came to trial, Mauro and Fusco were again removed from state prisons and taken before the United States District Court pursuant to another writ of habeas corpus ad prosequendum. Thereupon, these respondents moved for dismissal of their indictments which had never been tried or even partially tried on the grounds that the United States had violated Article IV(e) of the Agreement by returning them to state prisons and state custody without first trying them on the merits of the federal indictments. The motions of Mauro and Fusco were denied.

### Respondent Ford's Partial Background Facts

A third respondent was Ford. Ford was arrested in Chicago in mid-October, 1973 on two federal warrants. One of the warrants was for bank robbery pending in the Southern District of New York Federal Court and the other was issued in the District of Massachusetts for unlawful flight. *Ford was in the custody of the State of Illinois authorities.*

Ford specifically requested a speedy trial on the federal bank robbery indictment. Ford accomplished this by means of a letter or letters sent to the United States Attorney for the Southern District of New York and also to the proper United States District Judge for that district. Ford stated by means of his letters that he was in the custody of state officials in Illinois waiting extradition to Massachusetts to stand trial for the escape or unlawful flight indictment.

Ford requested the court and the United States attorney for the Southern District of New York to take action on the federal bank robbery indictment against him *either by bringing him to trial or dismissing the indictment.* Ford maintained that his demands were soundly based on his constitutional right to a speedy trial.

A superseding, later indictment was filed against Ford in early April of 1974. It charged Ford and one James Flynn with the same bank robbery that had been charged in the first indictment and also charged Ford with the use of a firearm in the commission of a bank robbery and also interstate transportation of a stolen vehicle and additionally charged a conspiracy offense to commit the above set out offenses. Ford was extradited and transferred to Massachusetts. Whereupon, the federal officials lodged a federal bank robbery warrant against Ford *as a detainer against him with the state prison authorities.*

Ford was convicted on the Massachusetts indictment and pursuant to the indictment that was filed in the United States District Court for the Southern District of New York, Ford was "produced from Massachusetts for arraignment" before the New York Federal District Court on April 1, 1974. This "production" of Ford resulted from a writ of habeas corpus ad prosequendum. Because Ford was not represented by counsel, these proceedings were adjourned until April 15th at which time Ford pleaded not guilty to the superseding indictment. Ford's trial on the merits did not commence until September 2, 1975. His trial had been postponed on five separate occasions either at the request of the federal government or on the court's own initiative.

Even though a correct detainer had been lodged by the federal officials sometime in March or perhaps even earlier in 1974, the

federal government on May 17, 1974, moved to adjourn Ford's trial for a period of 90 days. The motion was granted and then the trial was rescheduled for August 21, 1974; but there was more government delay because a second postponement was granted and the case was then reset for November 18, 1974. On November 1, the government requested yet an additional (either the second or the third) 90 day adjournment in order to apprehend Flynn.

Later the Federal District Court granted yet another motion of the Government, over Ford's objections, to set a new trial date on February 18, 1975. Apparently, the assigned United States District Judge was engaged in a stock-fraud trial on February 18, and the trial of Ford was again postponed and rescheduled for June 11, 1975. By June 11, 1975, a complete year and probably much more had elapsed after the filing of the detainer by the government. The trial was postponed for the last time and again reset for September 2, 1975.

Ford clearly and vociferously argued, among other contentions, that his indictment should have been dismissed with prejudice because he was not tried within 120 days of his arrival in the Southern District of New York in violation of Article IV(c) of the Agreement. The text of the Agreement is set out at 436 U.S. at 352–53, 98 S.Ct. at 1843–44, 56 L.Ed.2d at 342.

Justice White wrote that Article IV(e) requires the receiving state to try the prisoner on the outstanding indictment before returning him to the state in which the prisoner was previously imprisoned. Justice White quoted as follows:

> If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

> Article V(c) similarly provides that the "indictment, information, or complaint on the basis of which the detainer has been lodged" shall be dismissed if the prisoner

is not brought to trial within the period specified in Art IV(c).

The Court of Appeals for the Second Circuit had held that regardless of whether a writ of habeas corpus ad prosequendum issued by a federal court to obtain a state prisoner is, by itself, sufficient to trigger the provisions of the Agreement that, nonetheless, the Agreement clearly governs situations such as Ford's *in which a federal detainer is first filed with the state authorities* and the writ (ad prosequendum) is then used to secure the prisoner's presence in a federal court. Thus, the intermediate appellate federal court clearly held that the Agreement governs such situations in which a federal detainer is first filed with the state authorities and the writ is then later issued to secure the prisoner's presence in the federal court. The same Circuit Court of Appeals determined that the writ of habeas corpus ad prosequendum utilized to bring Ford to the federal court was, indeed, a written request for the temporary custody or the availability of Ford, being well within the meaning of Article IV(a). The Circuit Court of Appeals then reversed and remanded the cause for a dismissal of Ford's indictment with prejudice.

The United States Supreme Court held (in Ford) that such a writ of habeas corpus ad prosequendum (standing alone) used by the United States to obtain state prisoners, which writ also directed the production of a state prisoner for trial on federal criminal charges, *was simply not a detainer within the meaning of the Agreement and thus did not trigger the application of the Agreement.* But, if a *detainer is issued first,* (before the writ ad prosequendum) and the detainer was activated by the United States, the Supreme Court then held that the United States was bound by the Agreement even though the actual, physical custody of the state prisoner is later obtained by a writ of habeas corpus ad prosequendum.

Two important restrictions were placed on the prosecuting authority once it had obtained the presence of a prisoner pursuant to Article IV. These restrictions exist because Article IV(c) states in substance that in respect to any proceeding *made possible under*

*this Article, trial shall be commenced within 120 days of the arrival of the prisoner in the receiving state,* but for good cause shown in open court the prisoner *or his counsel* being present, the court having jurisdiction of the matter *may grant any necessary or reasonable continuance.* Article IV(e) also requires the receiving state to try the prisoner on the *outstanding untried indictment before returning the prisoner to the state in which he was previously imprisoned.*

Thus, it is seen that the prisoner must be tried within 120 days with respect to any proceeding made possible under Article IV subject to any necessary or any reasonable continuance *and importantly* the prisoner must be tried by the receiving state before returning the prisoner to the sending state.

Johnson contends that the second sentencing hearing was made *possible* by the Agreement. So argues Johnson. The other opinion has failed and neglected to affirmatively hold that the cocaine indictment was a tried indictment thus leaving, in turn, John Pershing Johnson's conviction and sentence before Judge Woods subject to numerous collateral attacks as well as direct attacks.

The other opinion writer's use of the word "charges" or "charge" raises grave, confusing issues as to Johnson's timely second hearing on punishment. This probability becomes large because the other opinion fails to determine that the 120 day restriction was fully met. *The motions for continuances were urged by appellant. The record reflects that the continuances in the case were both necessary and reasonable and our Ninth Court should so declare and hold—but neglects to do so.*

In summary, the U.S. Supreme Court held that in Mauro's case and in Fusco's case that a writ of habeas corpus ad prosequendum issued by a federal court to state authorities directing the "production" of a state prisoner for trial on a federal criminal offenses is not a detainer within the meaning of the Agreement and thus does not trigger the implication of the Agreement. However, in Ford's case the high court held that the United States is bound by the Agreement when the United States activates the provisions of the Agreement by filing a *detainer as such*

against a state prisoner and then secondly obtains his custody and his physical presence in a U.S. court *by means of a later issued writ of habeas corpus ad prosequendum.*

I would respectfully submit that it is of substantial state wide importance and interest considering the Texas practice of bifurcated criminal trials, to determine whether the indictment here involving cocaine against Johnson was and is a tried indictment or an untried indictment. Salutary and beneficial to both the prosecution and the defense is a resolution of this keystone issue in order to determine whether the Interstate Agreement on Detainers has any application whatsoever to the many partial, limited remands as to punishment. In view of the *facts* of *Mauro* and *Ford,* the drafting and wording of the other opinion thereon, is incomplete if not badly flawed.

The other author holds and determines that when a prisoner demands speedy disposition of certain "charges" pending in another member state, that the provisions of the Agreement are triggered—and also when a "detainer" is filed with the custodial (sending) state by another state (receiving) having "untried charges" pending against the prisoner, the Agreement is triggered into full play.

The other writer's reliance on *United States v. Mauro, supra,* is misplaced; but the loose language used (charges) constituted an open arms invitation and opportunity to Johnson to escape Judge Woods' sentence. An argument can be repeatedly made in many counts including those of the United States of America that Johnson, at least, had "charges" pending against him as to punishment.

Therefore, again it is imperative that the other opinion declare the time limitations of the Agreement to have been met factually. Thus, the Court's opinion leaves open to attack the correctness of the denial of appellant's motion to dismiss the cocaine indictment pursuant to the Interstate Agreement on Detainers because of the Court's concept of "charges" and the use of the term "charge".

I would hold that the denial to dismiss is correct because the indictment was tried and also the record clearly demonstrates that the hearing was had timely on three grounds: 1) the state was ready and announced so; 2) the attorney for Johnson wanted the case to stay on the trial docket; 3) the trial lawyer for Johnson asked for and obtained several continuances in order to locate and study the previous record. No "charge" or "charges" in correct legal contemplation were pending against Johnson.